# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **20mj2561**
Information associated with a cellular telephone number )
619-890-9047 that is stored at premises )
controlled by Verizon Wireless )

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Federal___ District of ___New Jersey___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1591, 2423, 2251, 2252 | Sex trafficking of children, Transportation of Minors for Prostitution, Production of Child Pornography, Possession of Child Pornography |

The application is based on these facts:

See Attached Affidavit of FBI Special Agent Jonathan A. Reynolds, incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Jonathan Reynolds
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Judge's signature*

Date: 6/26/2020

City and state: San Diego, California           Hon. Mitchell D. Dembin, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jonathan A. Reynolds, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a search warrant for Cingular Wireless\A&T, located at 11760 US Highway 1, Suite 300, North Palm Beach, FL 33408 and Verizon Wireless, located at 180 Washington Valley Road, Bedminster, NJ 07921, as described in Attachments A-1 and A-2, to search the accounts associated with the following cellular telephone numbers:

    (a) 480-468-0592 (**Subject Account 1**), IMEI: 354829091181085; and

    (b) 619-890-9047 (**Subject Account 2**), IMEI: 356169094822890,

(collectively, the **"Subject Accounts"**), for subscriber information, telephone toll data, and cell-site geo-location information, for the period of April 1, 2020 up to and including May 7, 2020. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C §§ 1591 (Sex Trafficking of a Minor) and 2423 (Transportation of a Minor to Engage in Prostitution), and 18 U.S.C. §§ 2251 and 2252 (production of child pornography, and possession of child pornography), as described in Attachments B-1 and B-2. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, Cingular Wireless\A&T and Verizon Wireless provides electronic communication services in the form of cellular and wireless telephone service for the **Subject Accounts**.

## AGENT EXPERIENCE AND BACKGROUND

2. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed by the FBI since March of 2017, and I have participated in investigations involving violent crimes, bank robberies, human trafficking, child exploitation, organized crime, drug trafficking, and money laundering activities. I also received twenty-one weeks of training at the FBI Training Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, physical surveillance, forensic techniques, interviewing, and a variety of other subjects. Currently, I am assigned to the FBI San Diego Headquarters, Human Trafficking-1, in San Diego, California to work crimes against children, specifically, the sexual exploitation of children to include various illicit commercial sex activities. I have participated in investigations involving the exploitation of children for illicit commercial sex activity, human trafficking, various illegal activities of criminal gang members and have performed a variety of related investigative tasks.

4. The facts in this affidavit come from my personal observations, my training and experience, and information from other law enforcement officers and witnesses. Since this affidavit is for the limited purpose of obtaining the requested warrant, it does not set forth every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation.

## FACTS IN SUPPORT OF PROBABLE CAUSE

5. On May 7, 2020, at around 10:30 AM, the San Diego Human Trafficking Task Force (SDHTTF) was alerted to a runaway juvenile out of Arizona thought to be involved in human trafficking. The mother of the Minor Female (MF), had submitted a tip to the Human Trafficking Hotline after discovering her daughter, MF, had posted online prostitution advertisements showcasing photos of MF and using her personal phone

number. Some of the photos used in the advertisements appeared to have been taken by someone else, as MF is posed up against a wall, illustrating someone was helping her.

6. As documented by the Phoenix Police Department, MF was seventeen years old, and a runaway out of Phoenix, Arizona. Detectives used MF's phone number to locate active advertisements offering commercial sex services in Arizona and, most recently, in San Diego. The ads contained prostitution jargon and listed pricing, including $300 for an hour, and $200 for a half-hour. For example, an advertisement stated "No BB," which in my training and experience I am aware means no "bareback," or sex without a condom.

7. On May 7, 2020, SDHTTF Detective Wells posed as a sex buyer and contacted MF using a recorded phone line. They agreed to meet for a half-hour encounter for a fee of $200. At approximately 11:30 AM, Detective Wells told MF that he was ready to meet, and she gave him an address for her hotel where she was staying—the Hilton Garden Inn, room 219, located at 3805 Murphy Canyon Road in San Diego. During the text conversation, Detective Wells asked if he needed to bring his own condoms. Task Force Officers (TFOs) began conducting surveillance on the parking lot of the hotel at that time. During a subsequent phone call where Detective Wells pretended to be delayed at work, MF stated she would be checking out soon and relocating to another hotel. She agreed to meet up at the new hotel and would send the address once she was checked in.

8. At around 1:15 PM, MF and Michael DUNBAR exited the hotel. They were detained by SDHTTF TFOs as they began to put their suitcases into the trunk of a car. It was determined at the scene that DUNBAR had rented their vehicle out of Arizona days earlier. Your affiant conducted searches of the license plate of the vehicle. Photographs from license plate readers place the vehicle in Phoenix, Arizona until late afternoon on May 6, 2020.

9. Additionally, surveillance video from the hotel showed DUNBAR checking into the hotel at just after midnight on May 7, 2020, with MF in his vehicle, and renting a hotel room. The latest commercial sex advertisement for MF was posted in San Diego approximately 37 minutes after their check in, with a timestamp of 12:37 A.M. As of the

3

time of the undercover operation by SDHTTF, DUNBAR and MF were headed to a new hotel so she could continue to prostitute.

10. Records checks revealed that DUNBAR had prior state arrests for pimping and supervising a prostitute.

11. DUNBAR was arrested at the scene, and MF was taken into protective custody and transported to the San Diego Police Department (SDPD) Eastern Division for interviews and processing.

12. During her interview, MF made statements that she met DUNBAR sometime in April, 2020. She stated that DUNBAR was aware that she was working as an "escort" going on dates and that she had given him money that she earned on dates in Arizona to pay for gas and bought DUNBAR food. MF admitted to manually stimulating the penis of five sex buyers during separate dates in Arizona. She stated she had been on a minimum of 20 dates in Arizona, and DUNBAR had driven her to most of the dates. Additionally, MF stated DUNBAR had given her advice on how to perform as a prostitute, such as, how common terminology was used in the "game," how to ensure sex buyers pay her for the dates and how to communicate with sex buyers during her dates. MF stated she had been provided methamphetamine and not given food during her time with DUNBAR.

13. MF consented to the search of her phone (**Subject Account 1**). On it, TFOs located a video recording of MF masturbating. TFOs reviewed the video. It appears to have been filmed by a male, whose voice can be heard in the background saying something that sounds like "who is your favorite PIRU?" On the recording, MF responds "you daddy." In my training and experience, I know that "daddy" is a term that females will commonly use to refer to their pimps/traffickers. Furthermore, investigation revealed that DUNBAR is originally from San Diego, and has a large tattoo across his chest which reads "PIRU." In my training and experience, I am aware that there is a criminal street gang in San Diego, California known as the Skyline PIRU. MF admitted DUNBAR recorded the video with her cellphone.

14. At the time of his arrest, DUNBAR had an Apple iPhone in a black case, clipped on his belt (**Subject Account 2**). Following his arrest, TFOs obtained authorization, pursuant to a search warrant issued by the State of California, Superior Court of San Diego (Warrant 2005081635-SDDA-HJE-SW) to search the case associated cellular devices and the vehicle that DUNBAR was driving when he was contacted on May 7, 2020. Inside that vehicle, TFOs recovered a second cell phone for DUNBAR but could not gain access to the device under the state issued search warrant.

15. Based on the facts above, there is reason to believe that DUNBAR, using the Subject Accounts, communicated with MF. Additionally, given that people traditionally carry cellular phones on their persons and are rarely away from home without their cellular phones, and given the location where each of the phones was found, I believe that DUNBAR possessed these cellular devices as he traveled with MF from Phoenix to San Diego for the purpose of commercial sex. I believe that the **Subject Accounts** will produce evidence that provides further corroboration of these events and details as provided by MF in her initial statement to law enforcement.

16. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that Cingular\AT&T and Verizon routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

17. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

18.     Given these facts, I seek a warrant to search the **Subject Accounts** for the records and information in Attachments B-1 and B-2.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19.     The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
JONATHAN A. REYNOLDS
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  26  day of June 2020.

_____
HONORABLE MITCHELL D. DEMBIN
United States Magistrate Judge

6

## ATTACHMENT A-2
## PROPERTY TO BE SEARCHED

Verizon Wireless hosts the electronic communication account associated with the telephone number 619-890-9047 that is the subject of this search warrant and search warrant application (**Subject Account-2**). Verizon is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 180 Washington Valley Road, Bedminster, NJ 07921.

# ATTACHMENT B-2
# ITEMS TO BE SEIZED

I. <u>Service of Warrant</u>

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. <u>Items to Be Seized</u>

Agents shall seize the following records, data, and information covering April 1, 2020 up to and including May 7, 2020 and maintained by the Provider for the subject account identified in Attachment A:

a. Subscriber information, including:
  i. Names;
  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
  iii. Local and long distance telephone connection records;
  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
  v. Length of service (including start date) and types of service utilized;
  vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
  vii. Other subscriber numbers or identities; and
  viii. Means and source of payment (including any credit card or bank account number) and billing records.

b. Records and other information about past wire or electronic communications sent or received by the subject account, including:
  i. the date and time of the communication;
  ii. the method of the communication;
  iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; [and]

11

iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;

Which are evidence of violations of 18 U.S.C. §§ 1591, 2423, 2251, and 2252.